GIDEON HAMILTON & wife *vs.* WILLIAM H. COLWELL.

An action in behalf of a person of full age under guardianship, must be brought in the name of the ward by his guardian, and in an action affecting real estate of a married woman whose husband is under guardianship, the husband, by his guardian, must join with the wife in bringing the suit.

EJECTMENT by Gideon Hamilton and wife against William H. Colwell, to recover possession of real estate belonging to the wife of said Hamilton. The defendant pleaded in abatement of the suit that the said Gideon Hamilton, although under guardianship, did not sue by his guardian. Demurrer and joinder.

*W. Sayles & W. H. Greene,* for the plaintiffs, in support of the demurrer. I. Neither the common law nor the statute requires the guardian of a *non compos mentis* to be named in the writ in a suit brought to recover the possession of the real estate of the *non compos mentis*. The general rule is that all persons having just cause of action may bring a suit, and no personal disability will deprive one of this right. Barb. Parties, 22. In respect of the recovery of the real estate of lunatics the action must be brought in the name of the lunatic unless otherwise provided by statute. Tyler on Eject. 202, and cases cited. A lunatic, or one *non compos mentis,* must appear by guardian if within age, and by attorney if of full age. *Beverly's case,* 4 Co. 124 ; Bac. Ab. 542, and cases cited ; *King* v. *Robinson,* 33 Maine, 114. A person *non compos mentis,* not an idiot from nativity, may appear by attorney, and the court will on motion appoint an attorney for him. *Faulkner* v. *McClure,* 18 Johns. 135 ; cited in note to 1 Chitty on Pl. *428. There appears to be no adjudged case where it is decided that the name of the guardian of a *non compos mentis* must in a suit at law appear in the writ. The statute (Rev. Stat. ch. 138, § 13) does not expressly place such a dis-

ability on a person under guardianship as to prevent him from bringing suit. Disabling statutes are to be construed strictly, because in derogation of private rights. *Smith* v. *Spooner*, 3 Pick. 229. ,

II. As to the appointment of a guardian *ad litem*. Every court has the incidental power to appoint such a guardian. 2 Kent Com. *229, and cases cited; *Mathewson* v. *Sprague*, 1 Curt. C. C. 457 ; *Hunt* v. *Gray*, 3 Sumner, 339 ; *Hardy* v. *Scanlan*, 1 Miles, 87 ; *Bigger* v. *Westby*, 13 S. & R. 347 ; *Davenport* v. *Davenport*, 5 Allen, 464. Such appointment is at the discretion of the court. *King* v. *Robinson*, 33 Maine, 114.

III. This suit is instituted in the name of husband and wife under Rev. Stat. chap. 136, § 15. Under such a statute providing that the separate property of a married woman shall remain under her control, &c., she is, as to her separate property, in the condition of a *feme sole*, and may bring an action at law in her own name without joining her husband. *Emerson* v. *Clayton*, 32 Ill. 493. In case husband and wife sue together, no guardian or *prochein ami* is necessary, though the wife be an infant. The husband appoints an attorney for both. Barb. Parties, 248.

IV. The court will not abate the writ, but in the exercise of its discretion appoint a guardian *ad litem* for the husband, if he shall be deemed to have any interest for protection.

*Ripley*, for the defendant, *contra*, cited Dane Abr. chap. 35, art. 3, §§ 2, 11 ; art. 12, § 9 ; *Byrne* v. *Van Hoesen*, 5 Johns. 66 ; *Long* v. *Whiddon*, 2 N. H. 436 ; *Mason* v. *Mason*, 19 Pick. 506.

POTTER, J. This is an action of ejectment by Gideon Hamilton and wife against William H. Colwell, to recover the land of Hamilton's wife. A plea in abatement has been filed, that the husband is under guardianship, and that he does not sue by his guardian. To this plea the plaintiff demurs.

The defendant contends that the plaintiff cannot sue except by his guardian.

An infant, having a guardian, must sue by guardian or by *prochein ami*. Chitty's Pleadings; Tidd's Practice ; 1 Bl. Com. 464.

In England the old guardianship by socage gave the guardian the control of the person and lands, and most probably of the personal estate. The only statute guardianship was the pro-

vision for testamentary guardian, by 12 Charles 2, chap. 24, §§ 8 and 9, and that was modelled upon the old guardianship by socage. But the guardian had the general control of the person and real and personal estate. As to persons who had not dis cretion to manage their estates, the lord chancellor was guar dian, as representing the king. 1 Bl. Com. 463; 2 Story's Eq. Juris. § 1335.

In this country the whole subject is regulated by statutes. And, although it may be necessary in many cases to resort to the common law for definition or explanation, yet, by sections twenty-eight and twenty-nine of chapter 138 of the Revised Statutes, certain duties are imposed upon them, which imply certain powers.

Our act does not, indeed, expressly provide for suits for real estate, but it does provide (§ 18) for collecting the personal prop- erty, and (by § 29) he is to improve his estate frugally and without waste, and to apply the income and profits thereof, or so much thereof as may be necessary and proper, to the support and maintenance of the person to whom it shall belong, and his household or family, if any such there be.

So far as the language of the statute goes, we can see no dif- ference between the powers of guardians of infants and of per- sons of full age. Both are incapable of contracting; and we see no reason why one should render himself liable for costs, or ap- point an attorney, more than the other.

And in *Mason* v. *Mason*, 19 Pick. 506, 508, the court recog- nize it as a general rule, that an infant cannot institute a suit without a guardian, and the question in that case was, whether it was an exception to that general rule.

In England, lunatics and those who are adjudged incapable of conducting their affairs (1 Bl. Com. 304, 463) in equity must sue by their committee. Story's Eq. Pl. § 64. But there seems to be some confusion in the practice at law. The first act re- lating to guardians passed in this colony, A. D. 1742, authorized the councils to appoint guardians of persons delirious, distracted, *non compotes*, of persons likely for want of discretion to bring themselves to want, &c., to take charge of their estates, to trans- act their secular affairs, and to sue in the behalf and name of such person, in as full and ample order as they themselves could if *compos mentis.*

Our ordinary practice was probably founded on this, and we think it the settled and proper form, that the suit should be in the name of the ward, by his guardian. In such a case, if removed, the suit would not abate, and if the infant became of age, the suit would remain to him.

But it is contended that by the alterations made in the old common law by our statute, relating to the property of married women (Rev. Stat. ch. 136), the husband in this case is a mere' nominal party.

By the common law, the husband had a freehold estate in the lands of his wife.

By the statute (§ 1) the real estate of the wife is so far secured to the wife as not to be liable for the husband's debts. But he may lease her estate, and may receive the rents until she (§ 3) gives notice to the tenants not to pay them to him ; and if the husband is in actual possession of the property, no provision whatever is made to alter his common law control of it, and the only mode in which she can assert her right is provided (§ 17) by applying to have a trustee appointed.

These views as to the rights of husband and wife have already been fully expressed by this court in the case of *Martin* v. *Pepall*, 6 R. I. 92.

And it would follow that nothing in that act has done away with the necessity of the husband appearing by guardian in such a case as the present.                     *Demurrer overruled.*